Good morning. May it please the court. My name is Glenda Carey and it's my privilege to represent Mr. Thomas Riley. Mr. Riley was convicted of possession of more than 500 grams of cocaine with the intent to distribute it. He was the sole defendant and there was no conspiracy allegation in this case. At the sentencing hearing, the court found that guideline 3B1.1C applied, thus imposed a two-level enhancement to his offense level. The court did not adopt the government's theory of three individuals being possible participants that Riley exercised control over. Rather, the court found that, did not find that there was evidence to support that, so ended up finding that Riley exercised management responsibilities over the property, the assets, the activities of the organization. That's clear error. United States v. Anderson is directly on point and it holds that this guideline applies only when the offense is committed by more than one criminally responsible person. And here we do not have more than one criminally responsible person. Riley was the only person who committed the offense of possession with the intent to distribute. So the government notes that the district court cited the part of application note number two about an upward departure may be warranted. But then also points to another, a number of other places in the transcript where the district court speaks more generally about supervising a participant and the like and suggests that in any event, any error would be harmless in light of his relationship with, I think, Kish, Elizabeth Kish. Can you address that? Certainly. Elizabeth Kish, I mean, the evidence, there's three potential circumstances where she was involved. And all three of them do not support that she was a participant, nor that Riley supervised her. First of all, the indictment is... A participant has to be criminally responsible for the same offense of which she was convicted. That is correct. And that's why this is important, that this isn't a conspiracy charge. This is possession with the intent to distribute. And so I think the government might have a bit of a stronger argument if there were a conspiracy allegation, but here we don't have that. So her isolated actions do not support this charge. The indictment is between August 30th, 2007 and May 12th, 2009. The government relies a lot on the fact that she opened the mailbox for Mr. Riley. The mailbox was opened in 2005, so that's two years before the indictment even alleges this charge. So? So? Well, she needs to be criminally responsible for this offense, and this offense occurred between August 30th, 2007 and May 12th, 2009. Still the same post office box, right? It is still open. It's true. She did not renew it. She testified she did not renew it. She opened it. She never paid more to... But that's the one he used, right? Correct. So I understand why the timing of her action... Her involvement was before the criminal allegations began. You said that, but so what? I think that's important because she needs to be criminally responsible for the offense. The question is this. If she is the owner or the leaser of this post office box into which the drugs that were then distributed were deposited, I gather, the question is, did she therefore possess the drugs with intent to distribute them? No. Or intent that they be distributed? She did not. She gave both keys to Mr. Riley. She opened it for him as a favor to him. She testified and was not impeached in any way that what she understood she was opening it for was his clothing business, and she actually received some clothes from that business. And his drug transactions in this case did not even begin until 2007. But she knew he was a drug dealer. He gave her drugs. She did admit that she knew that he was involved with drug dealing, yes. So the government points to 2007, Riley mailed her two kilograms of cocaine, told her to hold it for him. I think this was, they said, 2007. Correct. And I think even that, the timing of that is not within... It was June 15, 2009 that she was interviewed, and she said about two years ago. So I think even that transaction doesn't, it's not established that that is within the period of the indictment. And I would... I'm sorry, when was it in 2010? June 15, 2009, I think was when she was interviewed. Excerpt 68, I believe, is where I got that from. But what I would refer the court to is the Egg case, E-G-G-E, where the, it's important, even if she received these drugs, and even if she, you know, bought these drugs, which she didn't, what she tested, it was in the pre-sentence report where it was relayed that she said she received these drugs. When she opened it, it was a birthday present. When she opened it, she discovered that it was two keys of cocaine. There's no evidence that she knew that ahead of time. Riley told her to hold on to it, and she didn't. It was stolen or whatever, it was gone. She didn't call the police and say, hey, I got two kilograms of cocaine here, or something like that. So it's quite different from if you do that. If somebody sends you something and you don't know what it is, and you call the police and you say, hey, looks like illegal drugs to me, as opposed to sort of holding on to them. I mean, you know, it sounds to me like she's criminally responsible. No, I would agree. I mean, the better tact would be to, you know, call the police. But she, I don't think she's a criminal. You're saying she may have been criminally responsible but not for this offense. Is that your ultimate lead? Certainly not for this offense, but also I don't believe the facts establish that she's criminally responsible even if the timing is okay because of the egg case where they have to, you know, like the two other individuals that the government submits or potential participants are also so clearly not because they received a duffel bag and they had an exchange in a car. Even if it were established that those were drug transactions, that would not be sufficient to establish that they were criminal participants because you have to be able to infer that the defendant knew that they had the intent to distribute it. So here it's the same even though there's no money transaction. You have to be able to infer that Mr. Riley had the knowledge. You infer that he knew that she was going to distribute it. And that's a direct quote from the egg case. She just has to be an aider and a debtor. She just has to assist him, correct? That's what we said in Smith and in Cyphers and some other cases. And it was undisputed that she knew he was in the, or at least there was ample evidence, that she knew he was in the drug business. Isn't that right? It's true. She admitted that she knew he was in the drug business. So she knew he was in the drug business. She had opened the peel box for him at some point. She held the drugs for him at some point. She allowed him to continue to use the peel box. So there's certainly some evidence that she was assisting him in his drug distribution, knowing that he was a drug distributor. I don't agree because the evidence of her opening the mailbox is undisputed, her testimony that she was doing it for a clothing line business. The drugs, it's true that she admitted that she received some drugs for him, but possession with the intent to distribute is not established. There's no evidence that she was assisting him with his distribution. Well, holding it for him would help him with his distribution. Isn't that wrong? Not only does she have to be a participant, but Riley has to exercise control over her. And this one transaction does not establish control. Well, our case law says one time is enough. So if he said, hold this for me, and there is the presumption or the assumption that hold it for me because I'm going to pick it up and distribute it, assuming there was, you could reasonably infer that, then that would be enough, I think, to make her a participant as we've defined it. Well, for one, she did not hold it for him. So even if he were trying to exercise control. She said it was stolen, correct? I mean, she held it for him until it was stolen, right? She didn't return it to him. She didn't call the police. She didn't dump it in a dumpster. There's nothing like that. I mean, she held it for him for some time. The record is completely absent as to how much time, if it was immediately stolen before. We don't know any of those sort of details. It wasn't flushed out. But what is your ultimate position about that transaction? It wasn't within a time frame? Well, that's sort of an added argument that I'm making that wasn't in the briefs. But my reply brief sets out the main argument in that the timing is wrong. Under the egg case, there's no evidence that she was assisting him. She was assisting him. She was holding drugs for him. Well, I think this one transaction doesn't establish that she was holding drugs for him. I understand. She was holding those drugs for him. He has to be able to, you know, even like the cases that talk about the people that are interpreting, and there's this one incident of him sending her. There's no knowledge that she had ahead of time that she was going to be receiving drugs. So she gets it. It's a birthday present. She gets it in the mail, and it's gone, and that's all we know. But it's not a birthday present because he said to hold it for her. He said that, but she didn't. Whether she threw it away, used it, whatever. It doesn't matter what she did. The question is what he did. He sends it to her with instructions to hold. What Riley, what we have to be able to infer. You're finding this from district court. It wasn't to be objected to. Pardon me? You are finding about this from the district court. There was no objection to that, finally. This is true in the pre-sentence report. But, I mean, the government is trying to use these transactions as establishing her, you know, that she's criminally responsible for possession with the intent to distribute. You have to be able to infer that Riley knew she was going to distribute. That's what the egg case says. Not that she knew. Not that Riley knew that she was going to distribute, but that Riley knew that she was helping him to distribute. What the egg case says is that she, being the second level, you know, him giving her drugs, be able to infer that Riley knew that she... Well, that's one possibility. But the other possibility is that she was adding and embedding him in distributing. And clearly she wasn't. And clearly she didn't. I mean, I think that even if she held these drugs, this does not establish that she possessed with the intent to distribute. She needs to be criminally responsible. Thank you. May it please the Court. My name is Frank Russo for the United States. I was the trial attorney of the Riley case and handled the sentencing. The evidence in this case established a couple of things. One, that Mr. Riley was a prolific drug trafficker, and the jury found him responsible for upwards of 35 kilograms of cocaine. And two, that he didn't do it alone, that he had help, and that he supervised that help. In fact, in the very indictment in this case, found the excerpt of Record 142, the government charged in the indictment, aiding and abetting responsibility on behalf of Mr. Riley, because we knew he wasn't doing this all alone. The very two kilograms that were seized in this case could not have been sent by Mr. Riley. They were sent by somebody else. That apart, the district court was correct. But that doesn't demonstrate he was supervising whom, for example. No, no, it does not. But I think in the context of all of the evidence in the case, it shows that Mr. Riley had help from a number of people, one of whom was Ms. Kish. And if I could just review the evidence on Ms. Kish, I think, really, that ends the inquiry here, as Your Honor has pointed out. Elizabeth Kish was someone who stated that Mr. Riley directed her to hold two kilograms of cocaine. That was in the pre-sentence report. It was not objected to. And it became the findings of fact of the district court. In fact, the district court used that statement of Ms. Kish to calculate Mr. Riley's relevant conduct. And as Judge Ikuda noted, in the Cypress case, the court looks at all of the relevant conduct when deciding upon a role enhancement. So it would be completely anomalous to say, well, she's a participant in terms of relevant conduct, but not a participant in terms of role. So really, I think what the district court said in this case is that Ms. Kish was a participant. In fact, in the context of some of his comments at sentencing, found in the record, he basically stated that, as far as Ms. Kish is concerned, there's actually more knowledge, especially in the fact that she received those two keys as opposed to having been a complete dupe of Mr. Riley. Now, that was in the context of an argument. When was that? That was at sentencing. When did she receive them? At some point in 2007. So what about the timing issue? Is there a timing issue? No. Well, is there a timing issue as to that event, or is that of interest to evidence of her knowledge of other events? No, I believe it's included in the relevant conduct. So including those two kilograms in the relevant conduct of Mr. Riley, which spanned, I believe, a year and a half in the indictment, makes him eligible for a role enhancement because even back in 2007, it shows that Ms. Kish had knowledge and was participating. So let me just change the facts a little bit. Let's say the facts have been that he had sent this package to Ms. Kish and had said, this is a birthday present for my mother. I would like you to keep it for me until Christmas or her birthday, whatever, and she had kept it. Let's say those were the facts. I believe those are the facts. Then she would not qualify, right? I'm presuming we believe, you know, district court believed that and found that to be the situation. She could not be convicted of anything. She thought she was holding a birthday present, right? If that was the only evidence of Ms. Kish's involvement, apart from opening the box and having all these kilos. No, I understand. So she has to be criminally liable or responsible. Yes, by a preponderance of the evidence. And I wasn't exactly, I mean, there were certainly findings as to the underlying facts here. I don't remember whether the district court actually said, you know, I find her criminally responsible or not. Sure. I don't believe the district court made that explicit, but under this court's case law, the district court doesn't have to do that. The district court simply can adopt the findings of the PSR and not say anything about who is a participant and still properly conclude that someone deserves an aggravating role enhancement. In fact, the case that I cited in my brief is Ramos-Aseguera for that proposition. Now, did the PSR identify her as a criminal participant? Yes, it did. The PSR. Do you have that? Sure. The excerpt of record 68. There are two references. I'm sorry, 68, hold on a second. In paragraph 36, is that what you're looking at? There is a paragraph 36 with the role, but. Is that the paragraph you're talking about? Excuse me? I'm just asking whether that's the paragraph you're talking about. I know that there are several. Well, you said page 68, so what I was just looking at as well is paragraph 36. So it says that about two years ago, he mailed her a birthday present, and when she opened it, it had two kilograms of cocaine, and he told her to hold it. But how does that prove she's criminally responsible? She doesn't say she did hold it, and she doesn't say that she. . . Well, it shows that he had knowledge that Mr. Riley was a drug trafficker, and I think. . . She said she had knowledge that he was a drug trafficker. You have to view that in the context of the whole trial evidence. Now, at trial. . . But this is the question I asked you before. Are you saying that that incident is a participation, or you're saying it's just evidence of what she knew when she did other things like open the box? I submit to the court that that's enough. Which is enough? Just that one incident would be enough to qualify. But all that happened was he sent her something and said to hold it. And she held it. Well, it doesn't even say that. And then when you look at the other evidence in the case. . . She opened the box. It had cocaine. He told her to hold her, but it was stolen before he arrived. But, I mean, if he sent me something and I just. . . Sure. Because I didn't throw it out. I mean, I guess that, in connection with the other evidence in the case, was enough to persuade the trial judge, who heard all the evidence. And he was the fact finder in sentencing. That's why I've been trying to get you to tell me whether this is the participation or whether it is evidence of other participation. It is both, I would argue. I think when you look at what Ms. Kish testified to. . . I think approximately 35 kilograms of cocaine went through there. Also, what you have her doing is, in the middle of all this happening. . . He also said she had no control over it, though, at the time of the later cocaine. Well, he directed her to open the box. Right. And he got the keys, which would also qualify for an aggravating role enhancement. And Judge Burgess clearly believed that she had the requisite knowledge when she was doing those things, as evidenced by the earlier transaction involving holding. . . And that's what Judge Burgess believed. Well, in the context of the sentencing argument. . . Judge Burgess made findings, or did he just rely on the PSR? He relied upon the PSR, but he also talked about Ms. Kish in the context of a friendship and affection enhancement. Now, that enhancement would have added two levels to Mr. Riley's guideline if he had used friendship and affection with Ms. Kish to get her to participate in the case. But that enhancement only applies if she had minimal knowledge. So what Judge Burgess said is that, at least as far as she's concerned, she had more knowledge. So he rejected the fact that she had minimal knowledge of the criminal enterprise and found that she had knowledge. And, in fact, as I stated in my brief, she also sent a package that was consistent with the over $200,000 of cash recovered in the case. She sent a package like that, and she was on videotape sending it. Of course, she said that she did it at the direction of Mr. Riley, but didn't know what was inside. Now, Mr. Riley himself also testified at the evidentiary hearing and was like Ms. Kish said, I didn't know that there was cocaine going to that P.O. box, but he admitted that he directed Ms. Kish. Well, let me turn back and see where we are. In order for him to be an organizer, there has to be at least one person who's criminally responsible, right? Yes. Okay. So there has to be a determination by the district court that somebody was criminally responsible. I gather that's the case. Now, I don't see anything in the PSR that the district court could have adopted saying she was criminally responsible. And you tell me there are no findings explicitly saying that. Well, he did adopt the findings of the PSR. But what are the findings in the PSR? But I don't see anything in the PSR that speaks to her criminal responsibility. There are a lot of facts from which one could infer criminal responsibility, but I don't see actually an explicit finding in the PSR saying she's criminally responsible. And you tell me there's nothing that he said explicitly that made his own findings sound like facts. So what do we do with that? So if I can direct the court to the PSR, the accepted records 89 through 90, it talks about, in this case, at a minimum, Riley was responsible for having Elizabeth Kish not only open the post office box at which she accepted packages in her name, but Kish also told investigators that at one point Riley shipped approximately two kilograms of cocaine to Kish and told her to hold it for him, which made her a criminal participant, albeit an uncharged one. So that was a finding in the PSR that Judge Burgess adopted, and that would qualify under this court's case law in Maldonado. Judge Burgess said... Excuse me. This is, from what you're quoting, is the government's response to an objection by the defendant. So I take it, if I remember how the process works, is the probation office puts out the PSR. Defendant gets a chance to object to possibly the government's response. And what you just quoted me is the government's response. No, Your Honor. I quoted you the pre-sentence writer's response. I'm sorry, the pre-sentence writer's response. And the actual enhancement where, again, it talks about him being an organized leader and manager is found in Excerpt of Record 73. It's paragraph 52. So what happened was the defense counsel objected to paragraph 52, and then there was a response by the probation officer delineating the evidence. And your position is that the district court, by adopting the PSR, would have adopted the response as well? Yes. I see. Okay. The district court, though, the one thing that the district court said that she did was receive the two keys. But, in fact, she didn't receive the two keys. She gave him the two keys. Yeah, I think that's a bit out of context. That's what the district court said that she did. I don't think he was talking about the keys to the box. He was talking about kilograms of cocaine. That's what I understand the court to mean. He was parroting that back, that she received the two keys, which would be true with regard to the 2,007 kilos said box. Keys K-I, not key K-U-I. Exactly. And the transcript is confused with what you're saying. Yes. Thank you. Thank you. I don't recall if you had time, but we'll give you a minute for rebuttal in any event if you don't have it. That's over time. If I can be brief, not only does the PSR have to find, if the judge relied on it, which was just a brief reference to it and then the court made other findings, but that he exercised control, that she was a participant, also has to find exercise of control. Both of those elements are important. The PSR did not find any exercise of control over Kish or anyone, nor did the court. The court didn't find that Kish was a participant. It did adopt the findings generally. But then when the government argued that these three individuals were participants, the judge said, no, I'm going to find based on this control of the organization. I'd like to direct the court to U.S. v. Syrax. So you're saying he never actually found that she was a person. In fact, he kind of refused to find that she was a person. Correct. He did refuse to find it. And I think that was a good reasoning. And the court got off on this other tangent, which was wrong. U.S. v. Syrax is a case that deals with not the question of whether the defendant was a leader, because there he clearly was a leader, but whether the other person was criminally responsible. And it's very distinguishable from this case because in that case, the criminally responsible person was pled guilty to other charges, was charged and pled guilty to mail fraud and wire fraud, and therefore you could infer that that person was criminally responsible for the money loss. But this is not necessary. Sometimes I've seen lots of cases where the government decides not to go after somebody who is helping out, particularly if there's a, you know, the kind of relationship where somebody might have been roped into something. I mean, they sometimes will give somebody a pass. But the Syrax case shows that in that case even it was a close question. The court said even though this is this working relationship, constant daily interactions, and the individual pled guilty to other charges in the same offense, they could infer that she also was aware of this. And here, this is so far removed. It is so tangential, her involvement with Riley's operation. Thank you. Thank you. Kasia Sawyer, U.S. Tansylvania.
judges: Kozinski, Berzon, Ikuta